No. 2644.

## ROBERT GENTRY v. THE STATE.

1. PRACTICE—CONFESSION.—To render a confession inadmissible upon the ground that it was induced by the promise of some benefit to the accused, such promise must be positive, and must be made or sanctioned by some one in authority, and be of such character as would be likely to influence the accused to speak untruthfully. The confession of an accused is not rendered inadmissible because it was made under the influence alone of fear of legal punishment.

2. SAME—CHARGE OF THE COURT.—The trial court in this case submitted to the jury the competency of the confession as evidence, and in the same connection charged them that it could be considered as evidence if the accused made statements therein relating to the commission of the offense which were otherwise found to be true. *Held*, that the charge was erroneous, because unauthorized by any evidence in the case; and that the error, though immaterial, necessitates the reversal of the judgment, inasmuch as exception was reserved at the time of the trial. (Code Crim. Proc., art. 685.)

APPEAL from the District Court of Fannin. Tried below before the Hon. D. H. Scott.

The conviction in this case was for the theft of fifteen dollars

and twenty-five cents in money, two promissory notes aggregating the sum of three hundred and nineteen dollars and eighteen cents, and a receipt for one hundred dollars, the property of J. H. Morrow, and the penalty assessed was a term of two years in the penitentiary.

Doctor J. H. Morrow was the first witness for the State. He testified, in substance, that he lived near the town of Nobility, in Fannin county, Texas. He went to that town on the twenty-seventh day of May, 1887, and stopped at the store of Mr. George Holcomb. Witness did not then know the defendant. On the day named, and in the store mentioned, witness took out his pocket book containing the written instruments described in the indictment and two ten dollar currency bills. He had one of those bills changed, receiving therefor one five dollar bill and five dollars in silver change. The five dollar bill and a twenty-five cent silver piece the witness placed back in his pocket book, which still contained the notes and receipt. He then laid his pocket book on the counter. Four dollars and seventy-five cents of the silver he placed in an envelope, which envelope he placed in his day book, and then put his day book in his pocket. About that time Mr. Howard came into the store, and requested the witness to fulfill a previous promise to cut his hair. The witness went into the rear room with Howard, forgetting and leaving on the counter the pocket book containing the notes, receipt and fifteen dollars and twenty-five cents. Witness finished cutting Howard's hair in about fifteen minutes, and then thought of his pocket book. He immediately went to the counter where he had left it, but it was gone. The disappearance of the pocket book created some excitement among the several parties present, and a search of each person was suggested. The defendant was not then present. Every person in the house was then searched, but the missing property was not found. After this search was made, Mr. B. H. Austin said to witness: "Doctor, I knew you could not find the property on any of those you searched. Go over to Yates's store (across the way) and search there. There are parties there who were in this store, but who have not been searched." Witness then went to Yates's store, and the people present, including the defendant, were searched, but the property was not found. Meanwhile witness was told that a boy was seen to go around Yates's store, and the search was continued until the book and all of its contents were found under the store by Ennis Sims and handed the witness.

Some time after the recovery of the property, and while witness was sitting on a wood pile near Yates's store, the defendant approached him, and, in a blustering manner, said: "Doctor, I understand you accuse me of getting your book?" The witness replied: "Young man, you are approaching me in a wrong manner." Defendant then said: "I don't want you to think I got your property." He then hung his head, began weeping, and repeated his declaration that he did not get the book. The witness then told the defendant that he had as well confess to the taking of the book and contents, or that he, witness, would prove it on him. Defendant then asked if witness had not found his book, and upon witness replying that he had, he asked why witness was "cutting up." Witness then said to him: "If you do not confess I will prove it on you." The defendant then asked: "If I do confess, will it go any lighter with me?" Witness replied that he did not know, but thought it would. The defendant then said that neither he nor his father had any money to spend on the matter, and offered to pay witness fifteen dollars to drop it. Witness replied that he did not want the defendant's money, and desired only that he should confess, and save him, witness, the task of going before the magistrate and proving his guilt. Defendant then asked if witness would prosecute him if he confessed, and witness replied that he would not volunteer to do so, but would have to do so if called upon by competent authority. About this time B. H. Austin came up and said to defendant: "You took that book off the counter when I went into the store after oil, and while Mr. Holcomb was drawing it." Defendant replied: "Yes, I got it then; but I did not hide it at the time they say I did, but at another time." All this occurred in Fannin county, Texas.

Cross examined, the witness stated that he did not see the defendant in Holcomb's store, nor did he know that defendant was searched at that store. He did not know that the defendant ever saw the pocket book before the theft. The defendant had no knowledge of the contents of the pocket book, unless he was present and saw witness when he opened it and took out the ten dollar bill to have changed. He could have seen the contents of the book, if present at that time.

At this point the witness was asked if he did not, after the recovery of the book, tell the defendant that, if he did not confess to the theft of the property, he, witness, who knew him to be guilty, would go before the magistrate, and prosecute him?

Witness replied that he told the defendant to tell the truth about the matter, or he would be prosecuted, and that he, witness, knew that he, defendant, took the book. The defendant replied that he did not want to confess to a lie; to which the witness replied that he wanted the confession of the truth and not a lie. Defendant then said that he did not hide the book when they said he did, but at another time. The witness was then asked if he did not, at his house, a few days after the loss and recovery of the book, tell Mr. Gentry, defendant's father, that he told the defendant, at the time of the confession, that if he did not confess to the taking of the book he would have him arrested. Witness answered that he did not use the word "arrested" on that occasion, but said that he would have the defendant prosecuted, or would prove the theft on him. Witness denied that he ever told Frank Lewis and John Fletcher, or either of them, that he threatened the defendant with arrest if he did not confess to the theft. Neither Lewis nor Fletcher was in the town of Nobility on the day of the theft. No one was present during the witness's conversation with defendant at the woodpile, except Mr. B. H. Austin, and he only a part of the time. At the conclusion of this witness's testimony, the State read in evidence the promissory notes and the receipt described in the indictment.

B. H. Austin was the next witness for the State. He testified that he stepped into Holcomb's store to get some oil, on the twenty-seventh day of May, 1887. He observed then that Doctor Morrow was in the back room cutting Mr. Howard's hair. The defendant was standing near the counter. While Holcomb was drawing oil for the witness, the witness saw the defendant walk down the counter, take up a pocket book from the counter, place it in his pocket and walk out of the store. The witness did not then know to whom the pocket book belonged. The witness was present when the first search of persons was made at Holcomb's store. The defendant was not then present. After that search was made, the witness told Morrow that he knew at first that it would not discover the book, and advised him to go over to Yates's store, and search parties there. That course was taken, but no book was found. Later on that evening, Ennis Sims found the book under Yates's store, where it had been thrown. Some time later the witness observed Morrow and defendant at the woodpile, talking. He joined them and said to defendant: "You got that book as you left the store when I went into it for oil." Defendant replied: "Yes, I got it then, but they are mis-

taken about the time I hid it." Witness's reason for not telling before that he saw defendant take the book was that he had great regard for the feelings of the defendant's father, who was a good man, and had been kind to him, witness. Witness was a renter on the place of the defendant's father, and obtained his supplies upon the security furnished by him.

Cross examined, the witness said that he saw the defendant take the book, and knew at the time that it did not belong to the defendant. Witness heard Morrow making inquiries about the book, saw the searching of parties at both stores, and was searched himself, but said nothing about his knowledge of the facts until after the defendant was seen to go around Yates's store, and was accused of the theft.

S. J. Merrill testified, for the State, that he was in Nobility on the day of the alleged offense. Yates's store had a front and a rear door. Witness entered Yates's store at the back door. While he was at the door, cleaning his feet, the defendant passed out of that door hurriedly and turned around the house towards the place where the pocket book was subsequently found by Ennis Sims. Before the witness had finished scraping his feet, the defendant returned and re-entered the store at the said back door.

John Thompson testified, for the State, that he was in Nobility when Doctor Morrow lost his pocket book. He saw the defendant and a small boy pass rapidly out of Holcomb's store and go towards Yates's store. The small boy stopped in front of Yates's store, but the defendant passed into Yates's store at the front door, and almost immediately emerged at the back door, whence he passed around the house towards the place where the pocket-book was subsequently found. He then went back the way he came. At that time Merrill was standing at Yates's back door, cleaning his feet. Witness saw Sims afterwards, when he found the pocket book under Yates's store house.

George Holcomb, the proprietor of the store from whence the property was taken, testified, for the State, in substance, that he saw the defendant in his store when he, witness, left the main room for the back room, to draw some oil for B. H. Austin. Frank Lewis and John Fletcher were not in Nobility on that day.

Ennis Sims testified, for the State, in substance, that he was one of the parties who searched for Doctor Morrow's pocket book, and was the party who found it. He found it under Yates's

store, at a point near the rear end. ·Some one, in the search, knocked off a plank, which ran lengthwise with the store on the ground, and, in looking under the house through the opening thus made, witness discovered the book.

The State closed.

M. Gentry, the defendant's father, testified, for the defense, that, on the day after the alleged theft, he went to the residence of Doctor Morrow and talked the matter over with him. In that conversation, Doctor Morrow said that the defendant confessed to the theft of the property; that he told defendant that, if he did not confess, that he would procure an officer, prosecute him, and prove him guilty of the theft.

The motion for new trial raised the questions discussed in the opinion.

*Taylor & Gallaway*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE.  I. To render a confession inadmissible upon the ground that it was induced by the promise of some benefit to the accused, such promise must be positive, and must be made or sanctioned by a person in authority, and must be of such character as would be likely to influence the accused to speak untruthfully.  (Rice v. The State, 22 Texas Ct. App., 654.)  And so, if the confession · was made under the influence of fear of legal punishment, such fear of itself does not render the confession inadmissible.  (Thompson v. The State, 19 Texas Ct. App., 593.)

In the case before us the confession of the defendant was evidently not the result of any promise of benefit to the accused.  No promise whatever was made to him by any one. It appears from the evidence that the confession was made under the influence alone of the fear of legal punishment.  No other influence is shown to have been operating upon defendant's mind to induce him to make a confession of guilt. Such being the case, we are of the opinion that the court did not err in admitting the confession in evidence.

II. But, whilst the confession was properly admitted in evidence, the court in its charge submitted to the jury, in effect, the question of its competency as evidence, and in doing so instructed that such confession should be considered as evidence if the defendant therein had made statements that were other-

wise found to be true, with relation to the commission of the offense. This portion of the charge was promptly excepted to upon the ground that there was no evidence to warrant it, and said exception is here presented by proper bill. We are of the opinion that the exception must be sustained. After a careful examination of the evidence before us, we do not find a particle of testimony even tending to show that any material, or even immaterial, fact connected with the theft was discovered in consequence of the information obtained from the defendant's confession. (Nolen v. The State, 14 Texas Ct. App., 474. ) This error in the charge having been excepted to at the time of the trial, we must set aside the conviction, notwithstanding such error is, in our opinion, in view of the evidence, immaterial, and could not have injured the rights of the defendant.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered October 26, 1887.